## CHANDLER *v.* TOWN OF ATTICA.

*(Circuit Court, N. D. New York.* January 7, 1885.)

1. REMOVAL OF CAUSE—COLLUSIVE TRANSFER—REMANDING CASE—ACT OF MARCH 3, 1875, § 5.

A plaintiff who has been introduced into a controversy by an assignment or transfer merely that he may acquire a standing and relation to the controversy, to enable him to prosecute it for the beneficial interests of the original party, is collusively made a party to the suit, and when the fact appears it is the duty of the court to remand the suit, under section 5 of the act of congress of March 3, 1875.

2. SAME—CREDIBILITY OF WITNESS—DISCRETION OF COURT.

Where an extraordinary transaction is disclosed, no satisfactory explanation of which is vouchsafed, and the evidence of the transaction, which it was in the power of the parties to produce, has been withheld, the court may disregard the testimony of the parties so far as it is improbable, and interpret the transaction in a way consistent with the ordinary conduct and motives of business men.

3. SAME—CAUSE REMANDED.

On further examination of the evidence and circumstances of the case the former order remanding the cause is affirmed, and a new trial refused.

Motion for New Trial.

*Redfield & Hill,* for plaintiff.

*Cogswell, Bentley & Cogswell,* for defendant.

WALLACE, J. The question raised upon this motion for a new trial is whether the court erred upon the trial in ordering the action to be remanded to the state court, upon the ground that the plaintiff was collusively made a party to the suit, for the purpose of creating a case removable to this court. It appeared in evidence that prior to February 9, 1884, the plaintiff was the owner of 12 unpaid and overdue coupons, for interest on bonds issued by the defendant, the coupons being for the sum of $25 each. The plaintiff was a citizen of the state of Connecticut. He had owned similar coupons previously, upon which he had brought suit in this court and recovered judgment. The defendant contested the coupons in that suit upon the ground that the bonds were issued without its authority.

On the ninth day of February, 1884, he purchased 79 other coupons, of the same issue of bonds, being also for $25 each, of Sistaire & Sons, bankers, of New York city. He paid for these coupons $79, or one dollar for each coupon of $25. Sistaire immediately delivered these coupons to the plaintiff's attorneys, who brought a suit upon them and the 12 previously belonging to the plaintiff. The suit was brought in the state court, and was immediately removed by the plaintiff to this court, and, as was conceded by his counsel, the suit was intended to be so removed at the time it was commenced. The negotiations between plaintiff and Sistaire & Sons for the purchase took place by correspondence. None of the letters were produced upon the trial, and it was not shown that they were lost, but both the plaintiff and Mr. Sistaire were permitted to testify, without objection, that there

was no arrangement or understanding between them in reference to the object of the purchase, or qualifying in any way the absolute transfer of the coupons from Sistaire & Sons to the plaintiff. Sistaire refused to produce his books showing the account between his firm and the plaintiff. Neither plaintiff nor Sistaire were asked or attempted to explain how plaintiff knew the coupons were for sale, how he came to purchase them, or why Sistaire & Sons sold $1,975 of coupons for $79. Sistaire was a witness on the trial of the former action brought in this court by the plaintiff against the defendant, and sold plaintiff the coupons on which that suit was brought at their par value. Upon the present trial he testified that he was unable to state whether his firm were the owners of the 79 coupons sold to plaintiff, or whether the coupons belonged to other persons.

If the court was authorized to find upon this evidence that the coupons were sold by Sistaire & Sons to the plaintiff to invest him with the legal title, and enable him to maintain an action thereon in this court without intending to transfer to him the beneficial interest therein, the case was properly remanded. *Fountain* v. *Town of Angelica*, 12 FED. REP. 8. As was held in that case, a plaintiff who has been introduced into a controversy by an assignment or transfer merely, that he may acquire a standing and relation to the controversy, to enable him to prosecute it for the beneficial interests of the original party, is collusively made a party to the suit, and when the fact appears it is the duty of the court to dismiss or remand the suit, under section 5 of the act of congress of March 3, 1875.

It is insisted for the plaintiff that this conclusion cannot be indulged, in the face of the testimony of the plaintiff and Sistaire to the contrary, both of whom are uncontradicted and unimpeached witnesses. It may very well be that there was no express arrangement or understanding between them to this effect, and that the testimony of each of them was literally true in this behalf; but there may have been some equivalent arrangement for the ultimate protection of Sistaire. If such an arrangement can be fairly inferred from the circumstances, the suit was properly dismissed. The plaintiff owned coupons which were not of sufficient amount to enable him to sue in this court by an original suit, or to remove a suit into this court from a state court, and which were not valid obligations of the defendant according to the decisions of the state courts. The plaintiff and Sistaire both knew the coupons were collectible by a suit in this court. Obviously, the plaintiff bought the coupons intending to sue upon them, and to invoke the jurisdiction of this court, because they were immediately delivered to his lawyer for that purpose. That Sistaire, knowing the coupons to be thus collectible, would be willing to sell them for one twenty-fifth of their face value, without attempting to get more for them, is utterly incredible. That he did not know whether they belonged to him or some one else, is also incredible, and it is quite fair to assume that they belonged to him. If Sistaire had

been insolvent at the time, and the question were whether the sale could stand as against his creditors, the gross inadequacy of the price paid would stamp the transaction as a colorable sale, unless it were shown that he had tried to get a better price. In such a controversy no prudent lawyer would permit his client to rest on the bare assertion of a purchase without the production of the correspondence by which the transaction was effected. If that correspondence was within his reach, and was not produced, its non-production would start a persuasive inference that it was unsafe to produce it. If, in such a controversy, the sale would be deemed a colorable one, why should it not be here ? If the sale was collusive, what was the nature of the real arrangement between the parties to it?

The court could not ignore the fact that an extraordinary transaction was disclosed; that no reasonable explanation of it was vouchsafed; and that the evidence of the transaction, which it was in the power of the parties to produce, was withheld. The court was therefore at liberty to disregard the testimony of the parties, so far as it was incredible, and interpret the transaction in a way consistent with the ordinary conduct and motives of business men. A sufficient motive appeared for just such a transaction as the statute, under which this suit was remanded, was enacted to meet, and the circumstances were consistent with that motive and inconsistent with the theory of an unconditional sale of the coupons. If the court was at liberty to disregard the testimony of the two witnesses, it was also justified in accepting it as true in part and untrue in part, in believing what was probable and in disbelieving what was incredible.

The case, then, resolves itself into the inquiry whether the court was foreclosed by the statements of the parties to the effect that the sale was *bona fide.* It is stated in *Newton* v. *Pope,* 1 Cow. 109, that it is difficult to establish a rule which shall regulate and limit the discretion of a court or jury in the degree of credit to be given to the testimony of a witness, but where he is unimpeached, the facts sworn to by him uncontradicted, and there is no intrinsic improbability in the relation given by him, his testimony cannot be disregarded. A witness may be contradicted by circumstances as effectually as by the statements of other witnesses. Conjecture is not to be substituted for probative *indicia;* but where these exist, a judge or a juror is not bound to surrender his convictions and blindly accept the statement of a witness, because no other witness has contradicted it, and the character of the witness is not impeached. The authorities are numerous that a judge or jury, in the exercise of judicial discretion, is at liberty to reject the statements of witnesses in the situation of the witnesses here, and under the circumstances of this case. *Harding* v. *Brooks,* 5 Pick. 245; *Elwood* v. *W. U. Tel. Co.* 45 N. Y. 549; *Kavanagh* v. *Wilson,* 70 N. Y. 177; *Gildersleeve* v. *Landon,* 73 N. Y. 609; *Koehler* v. *Adler,* 78 N. Y. 287.

The motion for a new trial is denied.